UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ANDREW JASON, III                                             CIVIL ACTION

VERSUS                                                        NO. 16-2728

PARISH OF PLAQUEMINES, ET AL.                                 SECTION "R" (2)

### ORDER AND REASONS

Defendant Charles J. Ballay, District Attorney of the 25th Judicial District, Parish of Plaquemines, moves the Court to enforce settlement, or in the alternative, for judgment on the pleadings on plaintiff Andrew Jason's section 1983 claims and state law claims.[1] For the following reasons, the Court denies defendant's motion to enforce the settlement, and grants defendant's motion for judgment on the pleadings.

### I.  BACKGROUND

This civil action arises out of plaintiff Andrew Jason's arrest for operating a vehicle while intoxicated and child endangerment. On April 3, 2015, at about 7:40 p.m., plaintiff was driving with his six-year-old son when his car was rear-ended by another driver.[2] Plaquemines Parish Sheriff's

---

[1]   R. Doc. 44.
[2]   R. Doc. 26-1 at 1 ¶¶ 1-2.

1

Office Deputy Christopher Thomas arrived at the scene of the accident shortly thereafter and interviewed both drivers.[3] Upon speaking with plaintiff, Deputy Thomas smelled alcohol on plaintiff's breath and observed signs of impairment, as plaintiff was swaying and his speech was slurred.[4] Plaintiff was also not wearing shoes.[5] Deputy Thomas asked plaintiff if he had consumed alcohol, and plaintiff responded that he had.[6] Based on plaintiff's appearance and admission, Deputy Thomas administered a Standardized Field Sobriety Test.[7] Plaintiff could not follow Deputy Thomas's instructions, turning right when instructed to turn left, and plaintiff failed the test.[8] Deputy Thomas placed plaintiff under arrest for operating a vehicle while intoxicated in violation of Louisiana law.[9] Upon discovering that plaintiff was driving with his six-year-old son, Deputy Thomas also charged plaintiff with child endangerment in violation of

---

[3]   R. Doc. 20-1 at 2.
[4]   *Id.*
[5]   R. Doc. 20-4 at 5.
[6]   R. Doc. 20-1 at 2; *see also* R. Doc. 26-1 at 1 ¶ 6 (Plaintiff's Statement of Uncontested Facts).
[7]   R. Doc. 20-1 at 2.
[8]   R. Doc. 20-4 at 5.
[9]   R. Doc. 20-1 at 2.

Louisiana law.[10] Thomas brought plaintiff back to the station, where plaintiff was given a chemical breathalyzer test, which yielded a .022%.[11]

On October 22, 2015, Plaquemines Parish dismissed the charges against plaintiff. On April 3, 2016, plaintiff filed this lawsuit against Plaquemines Parish, the Plaquemines Parish Sherriff's Office, Deputy Thomas, and the Plaquemines Parish District Attorney's Office.[12] On June 29, 2016, plaintiff amended his complaint and named as defendants Lonnie J. Greco, Sr., individually and in his capacity as the Sheriff of Plaquemines Parish; Deputy Thomas; Charles J. Ballay, individually and in his official capacity as the District Attorney of Plaquemines Parish; and one or more unnamed Assistant District Attorneys of Plaquemines Parish.[13] Plaintiff's complaint alleges that his false arrest and the resulting consequences violated his constitutional rights under 42 U.S.C. § 1983. Plaintiff also alleges state law claims of false arrest or imprisonment, malicious prosecution, intentional infliction of emotional distress, defamation, and negligent hiring and/or supervision.[14]

---

[10]   *Id.* At no point throughout this litigation has plaintiff denied that he was driving with his six-year-old son.
[11]   *Id.*
[12]   R. Doc. 1 at 2. Plaintiff voluntarily dismissed Plaquemines Parish from the suit. R. Doc. 7.
[13]   R. Doc. 22 at 1-2.
[14]   R. Doc. 1 at 6-7.

On September 6, 2016, the Court found that Deputy Thomas had probable cause to arrest plaintiff, and granted Deputy Thomas's motion for summary judgment on plaintiff's federal claim and his state law false imprisonment/arrest, malicious prosecution, and defamation claims.[15]

Defendant Ballay now moves the Court to enforce a settlement agreement between himself and his office and plaintiff, or in the alternative, for judgment on the pleadings on plaintiff's claims against him in both his official and individual capacities. Plaintiff did not respond to any of the substantive arguments contained in Ballay's motion, but did submit that he is "asking the court for a settlement in the amount on five thousand dollars to compensate for costs incurred due to the arrest."[16]

## II.  LEGAL STANDARD

### A.  Settlement

The Court has the inherent power to recognize, encourage, and enforce settlement agreements reached by the parties. *Bell v. Schexnayder*, 36 F.3d 447, 449-50 (5th Cir. 1994) (citing *CIA Anon Venezolana de Navegacion v. Harris*, 374 F.2d 33, 35-36 (5th Cir. 1967)). If the substantive rights and

---

[15]  R. Doc. 30.
[16]  R. Doc. 49 at 3.

4

liabilities of the parties derive from federal law, then federal law determines questions regarding the enforceability or validity of settlement agreements covering those rights and liabilities. *Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 389 (5th Cir. 1984). If the rights and liabilities derive from state law, then federal courts apply state law to determine the validity of the agreement. *See Lefevre v. Keaty*, 191 F.3d 596, 598 (5th Cir. 1999). Given that the purported settlement covers both Louisiana law and federal claims, the settlement must be valid and enforceable under both Louisiana and federal law.

### B.    Judgment on the Pleadings

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is appropriate if the matter can be adjudicated by deciding questions of law rather than factual disputes. *Brittan Commc'ns Int'l Corp. v. Sw. Bell Tel. Co.*, 313 F.3d 899, 904 (5th Cir. 2002). It is subject to the same standard as a motion to dismiss under Rule 12(b)(6). *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for

the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiff's claim is true. *Id.* It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Id.* In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand*, 565 F.3d at 257. If there are insufficient factual allegations to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, the claim must be dismissed. *Twombly*, 550 U.S. at 555.

## III. DISCUSSION

### A. Settlement

Before addressing the merits of Ballay's legal challenge under Rule 12(c), the Court must first resolve whether there is an enforceable settlement

between Ballay and plaintiff. Ballay has submitted a copy of a Release and Settlement Agreement,[17] but neither party signed the attached Agreement. Despite the lack of signatures, Ballay argues that the settlement is valid and enforceable because there was a "meeting of the minds between the parties."[18] As evidence of this "meeting of the minds," Ballay submits copies of emails from plaintiff's initial counsel, Julien Jurgens, to Ballay's counsel, Ralph Alexis, discussing a possible settlement. Ballay also submits a declaration from Mr. Alexis, attesting to the authenticity of the emails.[19]

On July 19, 2016, Mr. Alexis emailed Ms. Jurgens and offered an undisclosed amount of money in exchange for a complete release and indemnification from plaintiff.[20] Six days later, Ms. Jurgens replied "[c]onfirmed and agreed."[21] On August 23, 2016, Mr. Alexis emailed Ms. Jurgens a copy of the release agreement, and indicated once Mr. Alexis had confirmation of plaintiff's approval, Mr. Alexis would transfer the settlement funds.[22] One month later, Ms. Jurgens replied that "[t]he [r]elease is fine."[23] Additionally, Ms. Jurgens emailed Mr. Alexis and told him that she "ha[s]

---

[17] R. Doc. 44-8.
[18] R. Doc. 44-1 at 6.
[19] R. Doc. 44-2.
[20] R. Doc. 44-3.
[21] R. Doc. 44-4.
[22] R. Doc. 44-5.
[23] R. Doc. 44-7.

7

[plaintiff's] approval to settle in writing."[24]  Despite this assurance, plaintiff never signed the settlement agreement, and there is no approval document signed by plaintiff in the record.  Nor do any of the emails disclose the terms under consideration.  Ms. Jurgens withdrew as plaintiff's counsel on December 12, 2016.[25]

Louisiana law provides that a "compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship."  La. Civ. code art. 3071.  "A valid and enforceable settlement may also be a compromise if it is reduced to writing."  *Id.* 2007 Revision Comments Note (c).  A compromise instrument is governed by the same general rules of construction applicable to contracts.  *Smith v. Walker*, 708 So.2d 797, 802 (La. App. 1 Cir. 1998).  A compromise is valid "only if there is a meeting of the minds between the parties as to exactly what they intended when the compromise was reached."  *Mayeaux v. Denny's Inc.*, 663 So. 2d 822, 824 (La. App. 5 Cir. 1995) (citing *Perault v. Time Ins. Co.*, 633 So. 2d 263 (La. App. 1 Cir. 1993).

---

[24]   R. Doc. 44-9.
[25]   R. Doc. 36.

8

Under Louisiana law, a compromise must either be reduced to writing and signed by the parties or their agents, or must be recited in open court and be capable of transcription from the record of the proceeding. *See* La. Civ. Code art. 3071; *Lavan v. Nowell*, 708 So. 2d 1052, 1052 n.3 (La. 1998) ("This court has held several times that although Article 3071 does not expressly require a signed writing, there is an implied requirement for signatures of both parties.") (citing *Sullivan v. Sullivan*, 671 So. 2d 315, 317 (La. 1996)); *see also Felder v. Georgia Pacific Corp.*, 405 So. 2d 521 (La. 1981). Louisiana appellate courts have consistently found unsigned written settlement agreements to be unenforceable. *See, e.g, Tran v. Allstate Ins. Co.*, 806 So. 2d 103, 105-06 (La. App. 4 Cir. 2001); *Bourque v. Peter Kewit Son's Co.*, 73 So. 3d 908, 911-12 (La. App. 5 Cir. 2011). Therefore, as neither plaintiff nor his attorney signed the settlement agreement, the agreement is unenforceable.

Ballay's reliance on *Singleton v. Bunge Corp.*, 364 So. 2d 1321 (La. App. 4 Cir. 1978), is unavailing. *Singleton* noted the signature requirement, but found that the plaintiffs' attorney's judicial confession in open court under La. Civ. Code art. 1853 that he had the authority to settle plaintiffs' claim bound the plaintiffs. 364 So. 2d at 1325. Therefore, the court in *Singleton* found that the judicial confession in open court was sufficient

9

grounds to enforce the settlement, not because there was a signed, written settlement, but because the terms of the settlement were recited in open court and the plaintiffs' attorney accepted those terms in open court.[26] This case is clearly distinguishable, as here the settlement agreement has no signatures, and there is no judicial confession or any proceedings in open court.

Thus, because Louisiana law requires written settlement agreements to be signed in order to be enforceable, the unsigned settlement agreement here cannot be enforced.

### B.     Judgment on the Pleadings

Because the settlement agreement is unenforceable, the Court will proceed to Ballay's Rule 12(c) motion.  Plaintiff brings claims against Ballay in both his individual and official capacities.  Ballay argues that, as a matter of law, he is absolutely immune from plaintiff's 1983 claims in his individual capacity, and that he is immune under the Eleventh Amendment in his official capacity.  Ballay also asserts various state law defenses to plaintiff's state law claims.  The Court will address Ballay's arguments in turn.

---

[26]     The court also found that the plaintiffs could not challenge their attorney's authority to accept the settlement on their behalf because they failed to properly record the contingency contract which stipulated that their attorney required their written approval before any settlement.  *Singleton*, 364 So. 2d at 1325.

### 1. Section 1983 Claims

Prosecutors are absolutely immune in their individual capacities from section 1983 liability for damages when the conduct complained of is "intimately associated with the judicial phase of the criminal process." *Van de Kamp v. Goldstein*, 555 U.S. 335, 341 (2009) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). In other words, absolute immunity applies when a prosecutor acts as an "officer of the court," but may not apply when he is "engaged in other . . . investigative or administrative tasks." *Id.* at 342 (quoting *Imbler*, 424 U.S. at 431 n.33). Judicial tasks traditionally protected by prosecutorial immunity include deciding to file or not file criminal charges, *Quinn v. Roach*, 326 F. App'x 280, 292 (5th Cir. 2009), and presenting witness testimony to a grand jury. *See Cook v. Hous. Post*, 616 F.2d 791, 793 (5th Cir. 1980). Absolute prosecutorial immunity also protects prosecutors accused of intentional misconduct, including "knowingly us[ing] perjured testimony, deliberately withh[olding] exculpatory information, or fail[ing] to make full disclosure of all facts." *Henzel v. Gerstein*, 608 F.2d 654, 657 (5th Cir. 1979) (quoting *Prince v. Wallace*, 568 F.2d 1176, 1178-79 (5th Cir. 1978); *see also Imbler*, 424 U.S. at 427 ("To be sure, this immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest

action deprives him of liberty."). Further, the Fifth Circuit admonishes against "pars[ing] the activities of a prosecutor incident to the bringing and trial of a case so closely, [otherwise] the cloak of immunity would be tattered." *Geter v. Fortenberry*, 849 F.2d 1550, 1555 (5th Cir. 1988).

Although plaintiff's complaint does not specify the conduct of Ballay's that plaintiff is challenging, he appears to focus on being charged and/or prosecuted. As it is established that the decisions to charge, not to charge, or to dismiss charges are all plainly within the ambit of the "judicial phase of the criminal process," *Goldstein*, 555 U.S. at 341, as a matter of law, Ballay is entitled to absolute immunity under section 1983 from any individual liability resulting from those decisions. *See, e.g.*, *Imbler*, 424 U.S. at 431; *Quinn*, 326 F. App'x at 292.

As to the claims against Ballay in his official capacity, Ballay argues that those claims are barred by the Eleventh Amendment.[27] Ballay's argument has been foreclosed by the Fifth Circuit. In *Hudson v. City of New Orleans*, the Fifth Circuit addressed whether the Eleventh Amendment barred section 1983 suits against Louisiana district attorneys in their official capacities. 174 F.3d 677 (5th Cir. 1999). The *Hudson* court applied the six-factor test from *Clark v. Tarrant County, Texas*, 798 F.2d 736, 744 (5th Cir. 1986), and found

---

[27] R. Doc. 44-1 at 13.

that Louisiana district attorney offices (and therefore the district attorneys in their official capacities) were not protected by the Eleventh Amendment. *Hudson*, 174 F.3d at 683.[28]

Ballay argues that the Court should ignore the holding in *Hudson* and instead find that *Esteves v. Brock* warrants the conclusion that the Eleventh Amendment applies here. 106 F.3d 674 (5th Cir. 1997). This argument is meritless. *Brock* held that a Texas district attorney was acting as an arm of the state, not the county he represented, but the holding in *Brock* was based on the treatment of district attorneys' offices under Texas law. *Id.* at 677-78. Because *Brock* was interpreting Texas law, there is no conflict between *Brock* and *Hudson*, and *Hudson* controls. *See Spike v. Phelps*, 131 F. App'x 47, 48-49 (5th Cir. 2005). Thus, Ballay in his official capacity is not protected by the Eleventh Amendment.

Nevertheless, plaintiff's section 1983 claims against Ballay in his official capacity are flawed for another reason. Plaintiff has failed to allege the basic facts necessary for a section 1983 claim. A suit against a government officer "in his official capacity" is the same as a suit against the

---

[28] The *Hudson* court relied on the Louisiana legislature's treatment of the district attorneys' offices as representatives of the state's political subdivisions and the fact that the state treasury would not be impacted by any verdicts against the district attorneys' offices. 174 F.3d at 683.

13

government entity of which he is an agent. *See Burge v. Parish of St. Tammany*, 187 F.3d 452, 468 (5th Cir. 1999) (citing *McMillian v. Monroe Cty., Ala.,* 520 U.S. 781, 784-85 (1997). In section 1983 suits, municipalities cannot be held liable under a theory of *respondeat superior*. *Pineda*, 291 F.3d at 328. Instead, the Court must apply the *Monell* test, which ensures that municipalities are held responsible *only* for "their *own* illegal acts." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (emphasis in original). Section 1983 municipal liability requires proof of three elements: (1) a policymaker, (2) an official policy or custom, and (3) a violation of constitutional rights whose "moving force" is that policy or custom. *Davis v. Tarrant Cty., Tex.*, 565 F.3d 214, 227 (5th Cir. 2009) (citations omitted). Thus, a plaintiff seeking to impose liability on a municipality under section 1983 must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403-04 (1997).

First, the Court has already found that there was no underlying constitutional violation arising from plaintiff's arrest.[29] Next, Plaintiff's complaint is devoid of any specific reference to an official custom or policy of the Plaquemines Parish District Attorney's Office that served as the moving force behind any alleged constitutional violation, even if one existed.

---

[29] R. Doc. 30 at 9-11.

Plaintiff's amended complaint does not mention any custom of the district attorney whatsoever, and only vaguely mentions that the unnamed assistant district attorneys "violated internal and/or publicized policies."[30] But this allegation, even if true, is insufficient; plaintiff "'must identify the policy or custom which allegedly caused the deprivation'" of his federal rights. *See, e.g.*, *Jones v. New Orleans Public Belt R.R.*, No. 14-2412, 2015 WL 365562, at *2 (E.D. La. Jan. 27, 2015) (quoting *Zara v. Strain*, No. 09-3919, 2011 WL 723409, at *2 (E.D. La. Feb. 22, 2011)). Because plaintiff fails to allege that an official custom or policy was a cause in fact of a constitutional deprivation, his section 1983 claim against Ballay in his official capacity must be dismissed. *See, e.g.*, *id.*; *Becnel v. St. Charles Parish Sheriff's Office*, No. 15-1011, 2015 WL 5665060, at *4 (E.D. La. Sept. 24, 2015) ("Because [plaintiff] fails to plausibly allege the existence of an official policy or custom . . . . [plaintiff]'s complaint must be dismissed."); *Simmons v. Mesquite Indep. Sch. Dist.*, No. 03-2665, 2004 WL 1171189, at *5 (N.D. Tex. May 26, 2004) ("Because plaintiffs fail to allege that they were damaged by the action of an official policymaker or defendant's policy, practice, or custom, plaintiffs have failed to state a claim under § 1983.").

---

[30]   R. Doc. 22 at 3 ¶ 11.

Therefore, plaintiff's section 1983 claims against Ballay, both in his individual and official capacities, fail.

### 2. Remaining State Law Claims

As with Ballay's absolute immunity against plaintiff's section 1983 claims, Ballay is similarly immune from plaintiff's state law claims of malicious prosecution and negligent hiring and/or supervision under Louisiana law. Adopting the rationale from *Imbler*, the Louisiana Supreme Court in *Knapper v. Connick* established that Louisiana district attorneys and their assistants are absolutely immune from civil liability arising from actions taken within the scope of their prosecutorial duties. 681 So. 2d 944, 950-51 (La. 1996). And, the decision to charge, and the decision not to dismiss charges, fall plainly within the scope of Ballay's prosecutorial duties. *See id.; Hayes v. Parish of Orleans*, 737 So. 2d 959, 961-62 (La. App. 4 Cir. 1999) (finding absolute immunity against any and all claims arising from delayed prosecution). Therefore, Ballay is absolutely immune from plaintiff's malicious prosecution claim, as are the unidentified John Doe assistant district attorneys.

Further, plaintiff's negligent hiring and/or supervision claims against Ballay must fail because they are predicated on acts that are shielded by absolute immunity. While plaintiff does not specifically identify the acts that

give rise to the alleged negligent hiring and/or supervision, any failure to supervise a district attorney in his or her decision to bring or pursue charges would fall within the scope of their prosecutorial duties and be absolutely immunized. Thus, the negligent hiring and/or supervision claims fail as to Ballay. *See Cousin v. Small*, No. 00-69, 2001 WL 617455, at *9-10 (E.D. La. June 4, 2001).

Finally, plaintiff's defamation claim must be dismissed. Plaintiff fails to allege any specific defamatory statement or the speaker of such a statement, beyond indicating in his complaint that "defendants defamed and slandered him by falsely accusing him of crimes."[31] Notwithstanding this failure, any statement made by a law enforcement official in the context of charging a defendant in a judicial or quasi-judicial proceeding is absolutely privileged without regard to the speaker's notion of the truth or falsity of the statement. *See Williams v. DiVittoria*, 777 F. Supp. 1332, 1340 (E.D. La. 1991) (statements made in the course of filing charges in judicial or quasi-judicial proceeding are absolutely privileged) (citing *Goldstein v. Serio*, 496 So. 2d 412, 414 (La. App. 4 Cir. 1986)). Therefore, to the extent that plaintiff argues Ballay or an unidentified assistant district attorney defamed him by

---

[31] R. Doc. 1 at 6 ¶ 17.

17

filing charges, these statements are absolutely privileged, and this privilege bars plaintiff's claims against Ballay as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Ballay's motion to enforce settlement and GRANTS Ballay's motion for judgment on the pleadings.

New Orleans, Louisiana, this __15th__ day of March, 2017.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE